UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NOAH JEREMY WIEHE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-1093 |
| ) | Judge Echols |
| ) | |
| CARL W. ZIMMERMAN, M.D. and ) | |
| MICHAEL STEPHANIDES, M.D., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This medical malpractice action involving a lengthy surgery and its aftermath was tried before a jury over a nine-day period. After deliberating slightly less than an hour, the jury returned a unanimous verdict in favor of Defendants Dr. Carl W. Zimmerman ("Dr. Zimmerman") and Dr. Michael Stephanides ("Dr. Stephanides"), the only two Defendants who had not previously been voluntarily dismissed by Plaintiff. Plaintiff has now filed a Motion for Judgment Notwithstanding the Jury's Verdict and/or Motion for New Trial (Docket Entry No. 234). Dr. Zimmerman and Dr. Stephanides have responded in opposition to that Motion (Docket Entry Nos. 236 and 238).

In his Motion, which properly should be titled Motion for Judgment as a Matter of Law and/or for a New Trial pursuant to Rule 50 and Rule 59 of the Federal Rules of Civil Procedure, Plaintiff asserts judgment should be entered in his favor or a new trial granted for three reasons. First, he claims that this Court erred in partially denying his Motion in Limine No. 3. Second, he claims that the Court erred in allowing Defendants' experts to testify on the issue of foreseeability. Third, he argues that the brief deliberations indicate the jury was biased against him.

1

# I. STANDARDS OF REVIEW

In a diversity action such as this, a state-law standard applies to review of a motion under Fed. R. Civ. P. 50 for judgment as a matter of law challenging the sufficiency of the evidence necessary to support the jury's verdict. In re Brown, 342 F.3d 620, 626 (6th Cir. 2003). "In Tennessee, a motion for judgment notwithstanding the verdict is the state-law equivalent of a federal motion for judgment as a matter of law." Medlin v. Clyde Sparks Wrecker Servs., 59 Fed. Appx. 770, 774 (6th Cir. 2003). Therefore, the Court must "'review the record, discard all countervailing evidence, take the strongest legitimate view of the evidence in favor of the non-moving party, and allow all reasonable inferences in his favor.'" Id. (quoting Mairose v. Fed. Exp. Corp., 86 S.W.3d 502, 510-11 (Tenn. Ct. App. 2001)). "A motion for judgment notwithstanding the verdict is proper 'only if, after assessing the evidence . . ., [the court] determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence.'" Id. (citations omitted).

The request for a new trial under Fed. R. Civ. P. 59 is governed by federal law, In re Brown, 342 F.3d at 626, and is almost entirely within the discretion of the trial court, Allied Chemical Corp. v. Daiflon, 449 U.S. 33, 36 (1980). A new trial may be granted to rectify a "'seriously erroneous result.'" Holmes v. City of Massillon, 78 F.3d 1041, 1046 (6th Cir. 1996). "A 'seriously erroneous result' [is] evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e. the proceedings being influenced by prejudice or bias." Kusens v. Pascal Co., Inc., 448 F.3d 349, 367 n. 13 (6th Cir. 2006). In ruling on a motion for new trial, the Court "must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." United States v. L.E. Cooke Co., 991 F.2d 336, 343 (6th Cir. 1993). The motion should be denied if the jury reasonably could have reached its verdict. Id. The verdict is not

2

unreasonable simply because different inferences and conclusions could have been drawn from the evidence or because a different result might have been more reasonable. Id.

## II. DISCUSSION

### A. Denial of Portions of Motion in Limine No. 3

Plaintiff first asserts that judgment should be entered in his favor or a new trial ordered because this Court erred in denying portions of his Motion in Limine No. 3. That Motion sought to preclude any evidence regarding (1) Plaintiff's birth name or gender; (2) the fact that the surgery was elective and for the purpose of a sex change; (3) the fact that Plaintiff changed his name; and (4) any reference to Plaintiff being a female, transgender, transsexual, or gay, and/or to his sexual identity or preferences. Instead, Plaintiff requested that the surgery performed by Drs. Zimmerman and Stephanides be simply referred to as a "complex pelvic surgery."

After considering the filings on the issue and hearing argument, the Court entered an Order granting the motion in part and denying it in part. Specifically, the Court granted Plaintiff's request, with the exception that Defendants could present evidence that "Plaintiff voluntarily underwent transgender surgery," instead of merely describing the surgery as "complex pelvic surgery." (Docket Entry No. 209 at 3). The Court found that Plaintiff's request to limit the explanation for such a lengthy, complicated surgical procedure to simply a reference to "complex pelvic surgery" was insufficient and somewhat confusing in view of the allegations of negligence, violations of the standards of care, and the anticipated proof, including expert testimony by physicians qualified in gynecology, plastic surgery, and similar types of surgery. The Court also cautioned counsel prior to trial that its ruling on Plaintiff's Motion in Limine No. 3 would be strictly enforced, both in letter and in spirit, and that the Court would "not look favorably on any efforts which seem to be attempts to inflame the passions or prejudices of the jury." (Id. at 4).

3

Plaintiff argues that this Court's failure to grant his Motion in Limine in its entirety was in error because Plaintiff's gender transformation process was wholly irrelevant to the issues in the case. He also argues that references to the gender transformation process only served to inflame the jury and prejudice him, particularly since Defendants "constantly" made the gender transformation surgery the center of their examination of witnesses. (Docket Entry No. 234 at 4).

The Court remains of the view that the fact Plaintiff underwent transgender surgery was relevant and it would have been prejudicial to the Defendant to prohibit them from explaining what they did, why the Plaintiff was placed in certain positions during surgery, and why the procedures took so long. The nature of the surgery was inextricably woven into the fabric of this case. The central issue was whether Dr. Zimmerman, a gynecologist, and/or Dr. Stephanides, a plastic surgeon, were negligent because they violated the applicable standard of care, and Plaintiff developed compartment syndrome as a result of his placement in the lithotomy position for an extended period of time. A description of the surgery explained the need for the use of the lithotomy and Trendelengberg positions, the length of the surgery, the blood loss, and other issues which Plaintiff focused on during trial as being a causation of compartment syndrome.

Further, were Defendants limited to referring to the surgery as being simply a "complex pelvic surgery," the jury would have been left to wonder why a gynecologist was performing such a pelvic surgery on a male. Additionally, merely referencing a "complex pelvic surgery" would have hampered Defendants' ability to cross-examine Plaintiff's sole expert witness, Dr. George Daneker ("Dr. Daneker"). Both Defendants relied extensively on the fact that Dr. Daneker was a general surgeon, not a gynecologist or plastic surgeon, and they took the position that, as a general surgeon, he was not knowledgeable about the standard of care for gynecologists, plastic surgeons, or surgeons

4

who perform transgender surgery. Both Defendants had performed transgender surgery on prior occasions.

The Court also rejects Plaintiff's assertion that he was prejudiced by the reference to the type of surgery at issue. There is no evidence to support Plaintiff's argument on this claim, and the Court should not presume prejudice any more than it should presume that a jury would be biased against the Defendant doctors because they perform transgender surgery.

Further, the prospective jurors were extensively questioned about any biases they might have and whether they would be prejudiced against Plaintiff because he underwent the surgical transformation procedure from female to male. In fact, on the day before trial, Plaintiff filed "Voir Dire Requests Regarding Sensitive Matters" (Docket Entry No. 225) which requested that the Court question prospective jurors about whether they (1) understood that the legal system was not based upon religious and/or personal moral standards; (2) could put their personal feelings aside regarding a person's sexual preference and/or desire to alter his or her gender; (3) would feel inclined to prohibit a person who had undergone gender reassignment to marry a person of the opposite gender; (4) had friends who were lesbian, gay, bisexual, or transgender, or would object to their child being taught by such an individual. Dr. Zimmerman also proposed a voir dire question about whether any of the jurors believed they could not render a just and fair verdict because the case involved an individual who underwent a gender transformation process. (Docket Entry No. 223). Based on those requests, the Court inquired into the prospective juror's views on such matters, as did counsel for Plaintiff and counsel for the Defendants. Any prospective juror who expressed concerns or evidenced any sort of prejudice was dismissed. Those that were chosen as jurors were carefully instructed that this was a medical malpractice case in which the Defendant doctors were charged with negligence in their treatment of Plaintiff. It also was made clear that the alleged negligence which caused the

5

compartment syndrome in Plaintiff's legs and resulted in his disabled right foot occurred during and after surgery, but was separate from the transgender surgery which was successful. Further, the jurors were instructed that they were not to allow sympathy or prejudice to affect their verdict and they swore they would follow the Court's instructions and render a fair and impartial verdict. See, Smith v. Jones, 2009 WL 973349 at *5 (6th Cir. 2009)(jurors are presumed to follow the court's instructions and directions); United States v. Milam, 494 F.3d 640, 643 (8th Cir. 2007)(jurors are presumed to follow their oaths).

### B. Testimony Regarding Foreseeability

Plaintiff next contends judgment in his favor or a new trial is required because Defendants' expert witnesses testified that it was not foreseeable that Plaintiff would develop compartment syndrome as a result of his extended placement in the lithotomy position.

It is true, as Plaintiff notes, that foreseeability is part of both duty and proximate cause which are matters of law. Adams v. Hendersonville Hosp. Corp., 2007 WL 14622454 at *7 (Tenn. Ct. App. 2007). However, the expert witnesses in this case testified about whether the standard of care in December of 2006 for gynecologists and/or plastic surgeons who performed gender transformation surgery required Dr. Stephanides and/or Dr. Zimmerman to be aware of the alleged link between prolonged surgery in the lithotomy position and the development of compartment syndrome. It was incumbent upon Defendants to defend against Plaintiff's medical malpractice claim by showing that (1) they did not violate the accepted standard of care of acceptable professional practice in their respective medical specialities, (2) they acted with ordinary reasonable care in accordance with those standards in this case , and (3) Plaintiff's injuries were not a proximate result of their negligent act or omission. T.C.A. § 29-26-115. The expert testimony presented by Defendants went directly to those issues. Moreover, whether any sort of injury resulting from the positioning of Plaintiff in the

6

lithotomy position during the prolonged surgery was foreseeable to Defendants was ultimately a question for the jury because Plaintiff claimed that Defendants should have known that placement of the Plaintiff in the lithotomy position for the duration of the surgery violated the standard of care. City of Elizabethton v. Sluder, 534 S.W.2d 115, 117 (Tenn. 1976); Linkous v. Lane, 276 S.W.3d 917, 926 (Tenn. Ct. App. 2008). In fact, Plaintiff specifically requested an instruction on foreseeability and the Court instructed the jury on that issue. This Court's Legal Causation instruction instructed the jury that the "foreseeability requirement does not require the person guilty of negligence to foresee the exact manner in which the injury takes place or the exact person who would be injured," but rather "[i]t is enough that the person guilty of negligence could foresee, or through the use of reasonable care, should have foreseen the general manner in which the injury or damage occurred." In short, the jury was instructed that whether an injury was foreseeable was a decision for it to make and, again, the jury is presumed to have followed that instruction. Smith, 2009 WL 973349 at *5.

## C. Short Jury Deliberations

Finally, Plaintiff claims the jury's verdict should be set aside because it deliberated less than one hour and it "defies logic that a jury could have properly deliberated in such a short period of time." (Docket Entry No. 234 at 4). Plaintiff also argues that the short deliberation "evidences that the jury was inflamed by the references to the Plaintiff's gender transformation surgery and/or began their deliberations prior to their charge in violation of this Court's instructions[.]" Id.

"A jury is not required to deliberate for any set length of time" and "brief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence." Wilburn v. Eastman Kodak Co., 180 F.3d 475, 476 (2d Cir. 1999)(collecting cases). Further, "[w]hile the amount of time spent in deliberations might provide some indication of whether the jury reached its conclusion with ease or struggled to agree on a verdict, it seems doubtful that the

7

duration of jury deliberations could ever provide certain guidance on the question of whether jurors were biased against the [plaintiff]." United States v. Lawrence, 405 F.3d 888, 905 n. 11 (10th Cir. 2005). Thus, "'[i]f the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial." Ahern v. Sholz, 85 F.3d 774, 785 (1st Cir. 1996).

Plaintiff's assertions in this case are nothing more than speculation. While the trial did span some nine trial days and a number of witnesses were called and many exhibits were received in evidence, it could very well be that the jury believed the Defendant physicians, Dr. Zimmerman and Dr. Stephanides, and the six other physicians, including gynecologists, plastic surgeons and a transgender surgery specialist, who testified as expert witnesses and who corroborated Defendants' testimony, rather than the sole expert general surgeon called by Plaintiff. In fact, it is likely this was one of the reasons for the jury's quick verdict. In any event, there is no question that the evidence was more than sufficient to support the jury's verdict.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment Notwithstanding the Jury's Verdict and/or Motion for New Trial (Docket Entry No. 234) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

8

Case 3:07-cv-01093 Document 243 Filed 05/21/09 Page 8 of 8 PageID #: 2680